IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

DOROTHY SNYDER
AND LISSA SNYDER                                                    PLAINTIFFS

VS.                                              CIVIL ACTION NO. 5:17-cv-133-KS-MTP

FOREMOST INSURANCE COMPANY
GRAND RAPIDS, MICHIGAN                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This cause comes before the Court on Defendant Foremost Insurance Company's Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment [38]. Plaintiffs filed their response and memorandum in support [54, 55], and Defendant has filed a reply [48]. Having reviewed the pleadings, the parties' submissions, the record in this matter, and the applicable law, and otherwise being fully advised in the premises, the Court finds the Motion for Partial Summary Judgment is well taken and will be **granted**.

I.   BACKGROUND

Viewing the facts in the light most favorable to the Plaintiff, the Court accepts as true the factual statements made by Lissa Snyder in her declaration in opposition to summary judgment. [52]. The following recitation of facts comes from her declaration and are supplemented by other undisputed evidence in the record:

Lissa Snyder is the daughter of Dorothy Snyder. [52] ¶ 1. Lissa has lived on "heir property" on Highway 33 in Fayette, Mississippi for the past seventeen (17) years. *Id*. ¶ 3. Prior to 2010, Lissa lived in a mobile home that her aunt owned, where she lived with her father until he died in 2008. *Id*. After her father died, Lissa continued to live in that mobile home until it was destroyed by fire in 2009. *Id*. She owned all the contents in that mobile home. *Id*. All of her contents in that

1

mobile home were completely destroyed by the 2009 fire. She had insurance on her contents with American Bankers Insurance Company of Florida, with whom she filed a claim for the fire loss. *Id*.; [38-16] at 3-4. On February 5, 2010, American Bankers paid Lissa $44,159.43, which she deposited into her bank account. [52] ¶ 3; [38-16] at 3; [38-17].

After Lissa's aunt 's mobile home and Lissa's contents were destroyed by fire, her mother, Dorothy Snyder, helped Lissa purchase a mobile home for Lissa to put on the heir property. [52] ¶ 8. Dorothy and Lissa purchased the replacement mobile home in 2010 for $11,000.00, with each of them paying one half of the purchase price. *Id*. Lissa purchased the replacement mobile home in her mother's name although Lissa was the one who had her bank wire the $11,000.00 purchase price from Lissa's account to the seller. *Id*.; [38-17]. The title was put in Dorothy's name because Dorothy wanted to make sure Lissa had somewhere to stay. [38-5] p. 17. Lissa used part of the money paid by American Bankers on the fire loss to pay her half of the cost of the new mobile home and to purchase contents, clothes, and remodel the replacement mobile home. [52] ¶ 9. Lissa and Dorothy insured the new mobile home with American Bankers, the same insurance company that insured Lissa's contents on her aunt's mobile home from 2010 until 2014 and paid the prior contents loss in 2010. [52] ¶¶ 13, 18.

Dorothy lived at 283 Pine Street in Fayette, where her son and grandson stayed with her, and she would visit Lissa. [38-8] at Ex. A (DS/FIC 00418); [52] ¶ 23. In late 2013 and early 2014, Dorothy started forgetting things occasionally, and Lissa asked Dorothy to stay with her from time to time so that Lissa could watch her, which Dorothy did from 2014 until 2017. [52] ¶¶ 13, 23. Dorothy started staying with Lissa in about mid May 2014. *Id*. ¶ 17. Due to Dorothy's health, Dorothy asked Lissa to speak for her. *Id*. ¶ 13. Since January or early February 2014, Lissa has

conducted Dorothy's business as Dorothy Snyder at Dorothy's authorization and direction. [52] ¶¶ 13-14. In August 2015, Dorothy granted Lissa a Durable General Power of Attorney. [52] ¶ 22; Ex. to [52] at p. 15-18.

Because the yearly insurance premiums kept rising with American Bankers, in 2014, Lissa discussed with Dorothy getting a cheaper insurance, and Dorothy agreed to help Lissa. [52] ¶ 13. Dorothy asked Lissa to find a cheaper insurance and get it in Dorothy's name. *Id*. ¶ 16. In early 2014, Dorothy gave Lissa permission to speak for her in getting insurance on their mobile home and contents. *Id.* Lissa found a cheaper rate at Foremost and called the company with Dorothy's permission and authorization for Lissa to speak for her. *Id.* In February 20, 2014, Lissa called Foremost to get insurance on the mobile home. [52] ¶ 16; [38-6] at Ex. A (DS/FIC 00414).[1] The insurance representative asked questions of Lissa as Dorothy Snyder, and Lissa answered the questions as Dorothy Snyder. [52] ¶ 16. During the February 20, 2014 conversation, the following relevant exchanges occurred:

> Dorothy: Yes, I was trying to get a quote on some homeowner's insurance.
> Jane: Alright, we can do that for you. All of our phone calls are recorded, and it takes about 15 minutes or so, is that okay?
>
> Jane: Alright, go ahead with your last name.
> Dorothy: Snyder, S N Y D E R.
>
> Jane: Okay, and your first name.
> Dorothy: D O R O T H Y.

---

[1] A recording has been submitted into evidence of a conversation with a Foremost representative named Jane and a caller who identified herself as Dorothy Snyder. Lissa avers in her affidavit that the telephone conversation entailed her identifying herself as Lissa and telling the representative that she was calling on behalf of her mother. [52] ¶16. The recording contains no such exchange. However, this discrepancy does not create an issue of fact because regardless of whether another phone call took place, misrepresentations occurred on this call, for which Lissa testified in deposition, after listening to the recording, that the voice was either that of her or her mother. [38-5] p. 43-44. Plaintiffs raise no other issues regarding what is said on the recording.

3

> Jane: Alright, and what state are you in?
> Dorothy: Mississippi.
>
> Jane: Okay, and do you have a spouse or anyone else that lives there with you?
> Dorothy: No.
>
> ***
> Jane: Okay. And now the physical address of the home.
> Dorothy: 1118 Highway 33, Fayette in Mississippi.
>
> ***
> Jane: Okay. And is this your primary residence?
> Dorothy: Yes.
>
> ***
> Jane: Okay, and what year is your home?
> Dorothy: A 1998 Chandelier.
>
> ***
> Jane: And when did you buy your home?
> Dorothy: Last week.
>
> Jane: Well, congratulations.
> Dorothy: Thank you.
>
> ***
> Jane: Will the home ever be vacant or rented out or is it your full-time residence?
> Dorothy: It will be a residence.
>
> ***
> Jane: Okay, in the past five years, have you been cancelled or non-renewed for any type of insurance policy.
> Dorothy: No.
>
> Jane: Any claims or losses of any kind in the past five years?
> Dorothy: No.

On May 28, 2014, Lissa called Foremost and spoke with an agent named Sean and procured the insurance. [38-6], Ex. A. (DS/FIC 00415). Again, the insurance representative spoke to Lissa as Dorothy, and Lissa spoke to the representative as Dorothy. [52] ¶ 19. During that conversation,

4

the following exchanges occurred:

> Sean: Thank you for calling the Foremost Insurance Service Center, all of our calls are recorded. My name is Sean how can I help you today.
> Dorothy: Yes, my name is Dorothy Snyder, I'm calling . . . I was calling about a mobile home quote.
>
> Sean: And it's Dorothy, DOROTHY?
> Dorothy: Correct.
>
> \*\*\*
>
> Sean: What's the spelling of your last name?
> Dorothy: S N Y D E R.
>
> \*\*\*
>
> Sean: Alright, it looks like you have spoken with one of our agents in the past. Let me see if she is available, just a moment. I apologize for the wait there ma'am. Jane was unavailable so we're going to go ahead and get you taken care of today. . . So looks like you got a quote with her at a home located at 1118 Highway 33, in Fayette, Mississippi. Is that correct?
> Dorothy: Yes.
>
> \*\*\*
>
> Sean: And you bought this in, looks like February of 2014. Is that right?
> Dorothy: Yes.
>
> Sean: Okay, and you paid actually $11,000 for it, is that correct?
> Dorothy: Yes.
>
> Sean: Okay. Now, do you currently have insurance on the home?
> Dorothy: No, I'm just now moving into it.

As to the purchase date, Lissa admitted giving a false answer in the February 2014 call and stated that she did not tell Foremost that the mobile home was purchased in 2010 because she did not think it was Foremost's business when they purchased it so long as they owned it. [38-5] p. 45-46; [52] ¶ 17. On May 28, 2014, the Defendant issued Dorothy Snyder an insurance policy. [38-2]. The premiums were paid from Lissa's account. [52] ¶ 19. On March 3, 2017, the mobile home and all its contents were completely destroyed by fire. [52] ¶¶ 21, 24, 25; [38-20] ¶¶ 3, 7.

Lissa was the only occupant in the house at the time of the fire, and she called Foremost as Dorothy to report the fire. [52] ¶¶ 24, 28. The Defendant wired $2000 to Dorothy Snyder that same day. [52] ¶ 29 and p. 43. Within less than two weeks after the fire, the Defendant issued payment to Dorothy Snyder for the policy limits of $72,883 and $1,092.31 for the storage shed, and thereafter, paid the policy limits of $5,000 for debris removal. Defendant denied the claims for additional living expenses and contents. [52] p. 70; [39] p. 1. Plaintiffs filed suit seeking contractual benefits, extra contractual damages, including punitive damages for alleged bad faith. Defendant now seeks to void the policy due to violations of the concealment clause contained in the policy.

## II. APPLICABLE LAW AND ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.*

However, "when seeking summary judgment, movant bears initial responsibility of demonstrating absence of genuine issue of material fact with respect to those issues on which movant bears burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 333-34 (1986)). In such cases, movant may not simply point to the absence of evidence supporting the nonmovant's case.

An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).

### B. Analysis

Defendant seeks summary judgment on the grounds that the policy is void under the policy's "concealment clause" due to misrepresentations and concealments made by Plaintiffs. The policy issued by Foremost Insurance to Dorothy Snyder states in relevant part:

> Concealment or Fraud. The entire policy will be void if any of you:
> a. Intentionally conceal or misrepresent any material fact or circumstance;
> b. Engage in fraudulent conduct;
> c. Make false statements;
> Whether before or after a loss or claim relating to this insurance.

[38-2] at 17.

> The policy also provides:
>
> You, your and yours mean the person named on the Declarations Page and that person's **family member**.

[38-2] at 19.

> Family member means a person who:
> 1. Resides in your household; and
> 2. Is related to you by:
>    a. Blood;
>    b. Marriage; or
>    c. Adoption.

[38-2] at 20.

Mississippi law, which concededly governs this diversity action, requires that an insurance company seeking to defeat a policy under a concealment clause bears the burden of showing, by a preponderance of the evidence, that statements by the insured were (1) false and (2) material and (3) knowingly and willfully made. *McCord v. Gulf Guar. Life Ins. Co.*, 698 So. 2d 89, 92 (Miss. 1997); *Clark v. Aetna Cas. & Sur. Co.*, 778 F.2d 242, 245 (5th Cir. 1985). "Concealment clauses are meant 'to enable the Company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims.'" *Clark*, 778 F. 2d at 246 (quoting *Edmiston v. Schellenger*, 343 So. 2d 465, 466-467 (Miss. 1977)).

Defendant moves for summary judgment based on misrepresentations made both before and after the fire loss. Because the Court finds there are no genuine issues of material fact with regard to the misrepresentations made before the loss, which alone are sufficient to grant summary judgment, it need not address the alleged false statements made by Lissa Snyder after the fire loss.[2]

   1. **False Statements**

The first set of misrepresentations deal with whose primary residence it is and who the occupants are. Based on Lissa Snyder's own declaration and deposition testimony, it is beyond

---

[2] In brief, the Court finds there are genuine issues of material fact regarding who owns the contents of the mobile home. Due to the many versions of facts given by Lissa Snyder as to the ownership, this Court would be called on to make an impermissible credibility determination. Also, there are genuine issues as to the materiality of who was home at the time of the fire and the location of the named insured given Dorothy Snyder's current mental and physical condition.

8

cavil that the mobile home that is the subject of the current claims was purchased in 2010 and that it was purchased to replace the mobile home that Lissa lived in that was destroyed by fire in 2009. In other words, Lissa was the only person who lived full-time in the mobile home purchased in 2010; it was Lissa's primary residence. It is also beyond dispute that Dorothy's primary residence was on Pine Street where her son and grandson stayed with her and that Dorothy only visited and stayed with Lissa from time to time from 2014 through 2017.

Considering those undisputed facts, in the initial telephone call to get an insurance quote, when "Dorothy"[3] was asked whether this was her primary residence, and she responded "yes," that was a false statement. Then when Dorothy was asked whether she had anyone else who lived there with her, and she responded "no," that was a false statement. Both statements specifically concealed the fact that this was Lissa's primary residence and that Lissa was truly the only one living there full-time. This is precisely the type of concealment that the Mississippi Supreme Court long ago declared impairs the validity of a policy. *See Am. Life Ins. Co. v. Mahone*, 56 Miss. 180, 192 (Miss. 1878) ("The concealment which vitiates the policy must be such as misleads, or deceives: such as a partial disclosure, omitting matters of importance, which, if disclosed, would make the answer full.").[4]

The second set of misrepresentations deal with the purchase date of the mobile home and prior claims and losses. First, it is beyond dispute that there was a fire in 2009 that destroyed the mobile home that Lissa was living in and she was paid over $44,000 by American Bankers Insurance for her contents claim related to that fire. Second, it is well beyond dispute that the

---

[3] The recorded call reveals questions were posed to Dorothy Snyder. It is irrelevant whether it was Dorothy speaking or Lissa speaking for Dorothy.

[4] The *Mahone* case did not involve a "concealment clause" in the policy; rather avoidance/rescission of a policy due to fraudulent misrepresentations/concealments in the procurement of the policy. However, the Court finds no distinction as to what would constitute concealment.

subject mobile home was purchased in 2010 and was insured from 2010 until 2014 with that same insurance company, American Bankers, who had paid the previous claim.

In the initial call to Foremost in February 2014, when asked when the home was purchased, and the answer was "last week," that was a false statement. Lissa admitted in her deposition that the answer was false, and her reason for giving the false statement was that it was none of Foremost's business to know when it was purchased if they owned it. Additionally, in the May 2014 call, the representative stated that the home was purchased in February 2014 and asked if that was correct, and the answer was yes. Again, that was a false statement. Next, the representative asked if she currently had insurance on the home and the answer was "No, I'm just now moving into it." Lissa explained that the reason she said "as Dorothy" that she was just now moving into it was because Dorothy had just started staying with Lissa a few weeks before the call. However, this does not account for the more relevant misrepresentation, which was telling the representative that "no," the home was not currently insured. That was clearly a false statement because the home was insured and had been for four years with American Bankers.

Finally, when asked in the initial call whether there had been any claims or losses in the past five years, the answer was no. Lissa again indicated that because she was speaking as Dorothy and Dorothy had not had any claims, the statement was not false. However, it is the totality of the misrepresentations that reveals the concealment. Of course, the question was being asked of Dorothy Snyder. The representative had no reason to ask about prior claims *by Lissa* because it had been withheld from Foremost that this was Lissa's primary residence and that the home was insured with American Bankers who had indeed paid on a fire claim in the past five years. As such, the prior concealments led to the further concealment, such that prior claims were never disclosed.

## 2. Materiality

"Mississippi courts take a 'broad view of materiality'" and "have held a wide range of information material under concealment clauses." *Clark v. Aetna Cas. & Sur. Co.*, 778 F.2d 242, 246 (5th Cir. 1985) (finding statements about the previous owner of the equipment at issue and the consideration paid were material and citing cases finding materiality as to insured's location at time of fire; refusal to answer questions during investigation; refusal to answer questions regarding financial matters). Such clauses "are meant 'to enable the Company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect themselves from false claims." *Id.* (citing *Edmiston*, 343 So. 2d at 466-467).[5] It is axiomatic that information relating to who occupies the home, when the home was purchased, which leads to information relating to current/prior insurance and any prior claims made, are material to an insurance company's ability to perform its risk evaluation. Thus, the Court finds the false statements made in this case were material.

Plaintiff argues that Defendant has failed to present any evidence that it would not have issued the policy but for the misrepresentations. However, this argument is of no moment because Mississippi law does not require a showing of prejudice for an insurer to prevail under a concealment clause. *See Hall v. State Farm Fire and Cas. Co.*, 937 F.2d 210, 214 (5th Cir. 1991).

## 3. Knowingly and Willfully Made

The third and last requisite under Mississippi law before Foremost can void any obligation to Plaintiffs is a finding that the misrepresentations were knowingly and willfully made. "If '[o]ne

---

[5] Although *Edmiston* addresses materiality in the context of insurance investigations, the same can surely be said in the gathering of information for underwriting purposes and the Company's assessment of the risks in issuing the policy in the first place.

cannot escape the conviction that the false statements . . . [are] knowingly and willfully made, . . . the intent to deceive will be applied." *Clark*, 778 F. 2d at 247. Lissa Snyder states in Paragraph 30 of her declaration that after the fire occurred, she was so upset and distraught that she may have misspoken when she talked with the Foremost agents and that she did not mean to give contradictory statements. However, that does not address misrepresentations made pre-loss.

For the false statements made during the initial telephone calls to procure the insurance, there is no explanation that raises a genuine issue of material fact. The only reason provided was that it was none of Foremost's business to know when the home was purchased. There was no confusion as to who would be living in the home; it was Lissa's primary residence. There was no question as to when the home was bought and that it had been insured—the reason given for contacting Foremost in the first place was because the current insurance was getting too expensive and Dorothy was helping Lissa find cheaper insurance. [52] ¶ 16. None of this was disclosed and regardless of whether Lissa was speaking as Lissa, or whether she was speaking as Dorothy, or Dorothy was in fact speaking for herself, the false statements that were made were done so knowing what the truth was; thus, the Court finds that misrepresentations were made knowingly and willfully.

### 4. Waiver

A waiver is "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." *Charter Oak Fire Ins. Co. v. B.J. Enters. of Miss., LLC*, 156 So.3d 357, 360 (Miss. Ct. App. 2014) (quoting *Bellemere v. Geico Gen. Ins. Co.*, 977 So. 2d 363, 369 (Miss. Ct. App. 2007)). Plaintiff urges that, even if the court should find there was a concealment/misrepresentation, Foremost waived this defense by (1) the agent completing the application; (2) allowing Plaintiffs to pay the premiums; and (3) by

making payments to the insured.

First, the Defendant does not seek summary judgment based on representations in a written application, but the verbal, recorded statements/responses Plaintiffs gave to direct questions from the Defendant, which were false. Second, retention of the insurance premium cannot constitute a waiver when the insurer is not aware of the misrepresentations when accepting the premium payments. *See Wilson v. State Farm Fire and Cas. Co.*, 761 So. 2d 913 (Miss. Ct. App. 2000*)*; *Casualty Reciprocal Exch. v. Wooley*, 217 So. 2d 632, 636 (Miss. 1969). Here, it is undisputed that the Defendant did not know about any of Plaintiffs' misrepresentations in procuring the insurance prior to the fire loss, because there were no conversations or information that would have revealed the true information. It all came to light during the claim investigation. Finally, while it is true that the Defendant issued an advance payment of $2,000 and, within two weeks after the fire loss, paid the policy limits for the dwelling and $1,092 for the storage shed, Plaintiff has cited no authority in support of their argument that partial payment on a claim constitutes a waiver as to policy defenses as to any further payments. Again, waiver is relinquishment of a known right. Not only did the Defendant not relinquish its rights, but it expressly reserved them. In the correspondence from claims adjuster Stuart Lee regarding the claim, the Defendant specifically stated:

> We reserve all rights and defenses under the policy and law and no activity on our part should be construed as a waiver. Even though only parts of the policy may be mentioned or quoted in this letter, additional portions if found to be relevant will be applied. [52] at p. 70; [38-8].

In light of the foregoing, the Court finds there is no genuine issue of fact regarding a waiver by the Defendant that would preclude summary judgment in this case.[6]

---

[6] As for all other arguments raised by Plaintiffs in opposition to the motion, the Court finds them irrelevant to the issue of a violation of the concealment clause.

## III. CONCLUSION

Based on the foregoing, the Court finds no genuine issue of material fact that Plaintiffs' actions under the concealment clause, by intentionally concealing material facts or circumstances and making false statements, have voided the policy. Defendant has carried its burden of showing, by a preponderance of the evidence, that Plaintiffs made false statements that were material and knowingly and willfully made. Therefore, judgment as a matter of law is warranted in favor of Foremost Insurance Company Grand Rapids, Michigan. Therefore, it is hereby ORDERED that Defendant's Motion for Summary Judgment is granted and a final judgment in favor of Defendant shall be entered separately on all claims by Plaintiffs.

DONE AND ORDERED this 19th day of November, 2018.

/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE